Johnson, Appellant, v. A. Hermann, Jr. et al.

Argued October 1, 1930.

Before Trexler, P. J., Keller, Linn, Gawthrop, Cunningham, Baldrige and Whitmore, JJ.

Byran A. Hermes, for appellant.

H. Rook Goshorn, and with him Harry S. Ambler, Jr. for appellee.

Opinion by Linn, J., December 12, 1930:

This appeal is from an order discharging plaintiff's rule for judgment against a garnishee on answers to interrogatories.

The plaintiff, who is the appellant here, had recovered judgment against Andrew Hermann, Jr., in an action of trespass. Attachment sur judgment was issued and the Continental Casualty Company was brought in as garnishee, interrogatories were served and answered, and the order now challenged was made.

The garnishee answered that it had no relations with Andrew Hermann, Jr., and had nothing belonging to him, but that it had insured Andrew Hermann, a different person from the defendant in the judg-

ment, and filed a copy of the contract of insurance.

Plaintiff's judgment was for personal injuries resulting from a collision with an automobile owned by Andrew Hermann but driven by Andrew Hermann, Jr.; in appellant's brief it is said that ".... the testimony at the trial showed that Andrew Hermann, Jr., was using the automobile in question for pleasure use." Andrew Hermann was not a defendant in the action. The learned court below was of opinion that the policy did not cover the tort of Hermann, Jr., while appellant contends that the use of his name in the policy renders the garnishee liable. That difference of opinion makes it necessary to consider the policy at some length.

The name of the assured is stated in paragraph 10, entitled "schedule,"—in form a printed paragraph containing a number of blank spaces to be filled in and adapted as circumstances may require, to affect the particular insurance desired. In this paragraph the name of the insured is stated in typewriting to be Andrew Hermann, with his address, and he is described as "individual," as distinguished from "co-partnership, corporation, estate or trustee," words also printed for the apparent purpose suggested. His business, in connection with which the policy was issued, is given by an indorsement on the policy as "public storage garage, not a public repair shop, not an automobile sales agency and not regularly calling for or delivering customers' cars." This description, of course, modifies printed provisions in the policy which might otherwise apply.

Paragraph 3 provided that the premium would be calculated at specified rates "applied to entire remuneration earned during the policy period by all employes of the assured. Such entire remuneration shall include all wages, salaries, commissions, bonuses and other remunerations. The remuneration of each ac-

tive executive officer and each proprietor including assured if an individual, and members of the firm if a co-partnership, shall be included in the payroll at an agreed amount of $2,000 per annum. The entire remuneration of each general manager and automobile salesman shall be included not to exceed, however, $2,000 for each per annum. The remuneration of all other employes shall be included at the actual amount earned ......." A part of that phraseology, though contained in the policy form, is of course not applicable to this assured's contract because of the limitation resulting from the fact that he is insured as trading as an individual.

Returning now to paragraph 10; it provides, subject of course to the quoted endorsement limiting its scope: "Statement 6. The description of the business operations of assured, estimated number of employes, estimated total remuneration and gross livery earnings, elevators covered, premium rates and advance premium are as follows: A. (1) All operations incidental and necessary to the conduct of the assured's business of operating public automobile garage, sales agency and service station, including the operation of any style, type or make of automobile, tractor, or trailer for all purposes in such business and for pleasure use, but not the renting or hiring of automobiles to others for any purpose nor the carrying of passengers or property for a consideration except such transportation or delivery of goods or merchandise for prospective purchasers as is strictly incidental to the demonstration and sale of automobiles. (2) Accidents resulting from the use of any automobile by proprietors or active executive officers shall be covered only in the event that the names of such proprietors or active executive officers are below written and $2,000 as annual remuneration is included in the estimated

total remuneration for each such proprietor or active executive officer.

Names of proprietors or active executive officers Andrew Hermann, Jr."

The name of Andrew Hermann, Jr., is typewritten in the blank space left in the policy form for appropriate entry. He is obviously not in the class "proprietors or active executive officers" strictly construed; that follows from the fact that Andrew Hermann is named as the assured, with the statement that he conducts his business as an individual. Opposite the name of Hermann, Jr., in a column headed "Estimated total remuneration for policy period" is the sum $2,000 placed under the sum $3,000, making a total of $5,000 to which the premium rate was applied. The record furnishes no explanation of what the parties to the contract intended by the entry of the name of Hermann, Jr., with his remuneration in the blanks provided, unless it was pursuant to paragraph 3 for the purpose of obtaining the total remuneration on which the premium would be calculated.

We are clear, however, that on its face the assured was Andrew Hermann, and not Andrew Hermann, Jr., and that for all that now appears in the record, it is to Andrew Hermann alone that the insurer is answerable. If at the trial, evidence showing a different relation is produced, of course, other questions may arise.

Appellant, however, contends in any event that liability to him results from a fact now to be stated. The 8th answer to appellant's interrogatories is "the garnishee answers that it received a telephone message from a broker, who informed it that said accident mentioned in said interrogatories had occurred while the defendant, Andrew Hermann, Jr., was driving the said automobile, which was the property of Andrew Hermann, Sr., and requesting that the said Andrew

Hermann, Jr., be aided by the company, garnishee. To this request, said agent or broker was informed that the Continental Casualty Company, garnishee, had not issued any policy of insurance or other indemnity covering said accident. At the request of the said agent or broker that aid be given to the said defendant, the said company informed the said broker that inasmuch as it had issued a policy of insurance to the father of said defendant, Andrew Hermann, Sr., covering his garage business, that it would, as a matter of business policy and courtesy to a policyholder, that it would permit its counsel, Wm. W. Smithers, to grant courtesy defense to the said Andrew Hermann, Jr., and as the matter was then in suit, to wit: Francis R Johnson v. Andrew Hermann, Jr., C. P., No. 5, December T., 1926, No. 1061, that it could not defend the case until the said Andrew Hermann, Jr., and Andrew Hermann, Sr., had executed a non-waiver of liability agreement, understanding and acknowledging that the said accident was not covered by the said policy issued to Andrew Hermann, Jr. Copy of said non-waiver of liability agreement is hereto attached as Exhibit A.''

The exhibit A recites that the insurer denied liability on the policy to Hermann, Jr., but would defend or adjust any claim against both Hermanns for the accident in question on the execution of an agreement that such conduct should be without prejudice to its disclaimer of liability; it contains such agreement.

To the 9th interrogatory, the garnishee replied: ''the garnishee answers that pursuant to said agreement, it did have its counsel, Wm. W. Smithers, enter and defend the said action against the said defendant, not because of any contractual liability but by virtue of the said agreement. No payments of money were made by Andrew Hermann, Jr., concerning the said defense, insofar as the deponent has knowledge, nor

was there any premium ever paid for any policy covering the accident in question. Nor was there ever any policy issued by the said garnishee covering the same.''

Appellant plants his right to judgment on the proposition that the insurer, by defending the suit against Hermann, Jr., made itself liable to pay the judgment against Hermann, Jr., on the ground of estoppel, and cites Malley v. American Indemnity Co., 297 Pa. 216 in support of the position. We think the contention unsound. In Malley's case the contest was between the parties to the insurance contract—the insured and the insurer; under section 3 of the declaratory judgment act (1923, P. L. 840) the court was asked to determine the liability of the insurer to the insured on the latter's claim that the insurer was bound to pay a judgment against the insured for personal injuries against liability for which the insurer had indemnified the insured. The insurer resisted payment on the ground that at the trial of the suit against the insured, it developed that the insured's interest was not as warranted in that he was bailee instead of owner of the automobile involved in the collision. The court held that it was too late to assert that defense in the circumstances; that having taken charge of and conducted the defense, apparently in accordance with the provisions of the policy, the insurer was thereafter estopped from denying liability to pay the judgment; that the insurer had elected to treat plaintiff's cause of action, if he had any, as covered by the contract of insurance.

At bar, the circumstances are altogether different and that principle is inapplicable. Here no claim was made and no judgment was obtained against the assured; there was no claim by the assured on the policy, and no election by the insurer to treat a claim against the assured (for none was made) as covered

by the policy; on the contrary there was denial of liability. That the insurer caused the suit to be defended, as has been stated, was pursuant to an independent contract, which, though done, "as a matter of business policy and courtesy to a policy holder" (in the words of the 8th answer) does not lay the necessary ground to support an estoppel as construed in Malley's case. For the same reason Moses v. Ferril, 97 Pa. Superior Ct. 13 is inapplicable. Appellant was not entitled to judgment on the answers.

The order appealed from is affirmed.